## Goodyear Shoe Machinery Co. v. Selz, Schwab & Co.

1. CONTRACTS—*General Rules of Construction.*—A contract is to be considered as an entirety; harmonious significance is, if possible, to be given to each of its parts; it is to be reviewed and interpreted from the standpoint occupied by the parties when it was made, and if enforced by the courts, must not be unconscionable or unreasonable.

2. CONTRACTS—*Application of the Rule.*—Where a contract provided that certain royalties on all boots and shoes made on certain machines during a calendar month were to be due on the first day of the calendar month next following, and were to be paid within one month from that day, but if said royalties due on the first day of any month should be paid on or before the fifteenth·day of that month, a discount of fifty per cent from the royalties specified in a designated schedule, would be granted in consideration thereof, *it was held* that the fifty per cent of the schedule price was the real measure of the royalties under the contract.

3. CONTRACTS—*Rights of Contracting Parties.*—Parties have a right to make such contracts as they see fit, and courts will enforce them, but this, like most general principles, is tempered in its application by other considerations of almost equal importance.

4. CONTRACTS—*Relief from Penalties in Law Courts.*—Formerly a person who incurred the penalty of a bond was compelled to resort to a court of equity for discharge by paying the damages which the obligee had suffered; now courts of law afford this relief.

5. CONTRACTS—*Liquidated Damages.*—In respect to undertakings for

Goodyear Shoe Machinery Co. v. Selz, Schwab & Co.

the payment of liquidated damages for the doing or not doing of certain things, courts of law will take into consideration the intent of the parties and the reasonableness of the contract. Whenever it appears that the stipulated damages are the subject of calculation and adjustment between the parties, and a certain sum has been agreed upon and intended as compensation, and is in fact reasonable in amount, it will be allowed as liquidated damages.

6. Contracts—*Stipulated Damages.*—The question presented to a court when asked to enforce the payment of stipulated damages is, is the amount reasonably compensatory, or is it a mere penalty having no relation to the injury actually suffered? If the amount stipulated violates the fundamental rule of compensation, it will be treated as a penalty, and this without reference to the name which may be given to what is obviously nothing but a penalty.

7. Contracts—*Penalty for Non-Performance.*—Where a large sum is stipulated to be on the non-payment of a less sum, made payable by the same instrument, the former is *prima facie* a penalty. If the question is to be determined by construction of the instrument alone, it will be deemed a penalty.

8. Contracts—*Interpretation of Doubts.*—In interpreting a contract the court, when in doubt, will presume the parties not to have meant the stipulated sum to be compensation, or in other words, will treat the sum fixed by the parties as a penalty.

9. Contracts—*Unjust and Unreasonable.*—The rule that courts will enforce such contracts as parties see fit to make must at times yield to other considerations; courts do not enforce contracts opposed to public policy, or unjust and unconscionable.

**Memorandum.**—Assumpsit. Error to the Circuit Court of Cook County; the Hon. Richard W. Clifford, Judge, presiding. Heard in this court at the October term, 1893, and affirmed. Opinion filed January 22, 1894.

## Statement of the Case.

Plaintiff in error brought in the Circuit Court an action of assumpsit to recover certain royalties alleged to be due upon a certain contract by it made with the defendant.

Paragraph three of the contract contains a schedule of rents or royalties to be paid by defendant in error for the use of the machines.

Paragraph four provides that defendant in error shall keep an account of all boots and shoes manufactured by the use of said machines, and shall render a statement thereof to plaintiff in error.

Paragraph five, being the one upon a construction of which this controversy turns, is as follows:

"The lessee agrees to pay unto the lessor, as rent for the machines hereby leased, and as royalty for the use of the patents hereby licensed, the rent or royalty specified in the schedule herein, on each pair of boots or shoes of the respective kinds mentioned or described in said schedule, made by the aid of said machines, or any of them, or by the use of the said patents or any of them, the rents and royalties for all such boots and shoes made as aforesaid during one calendar month, to be due and payable on the first day of the calendar month next following, and to be paid within one month from that day; but the lessor hereby agrees that if the rents and royalties due on the first day of any month, shall be paid on or before the fifteenth day of that month, it will, in consideration thereof, grant a discount of fifty per cent from the rents and royalties specified in the schedule aforesaid; and the lessee further agrees to pay, while it shall retain possession of the machines hereby leased, all taxes thereon, to whomsoever laid or assessed."

Upon the basis of the schedule in paragraph three, the rents and royalties for the machines in use in the Chicago factory, during the month of September, 1891, amounted to $1,198.63, no part of which was paid until November 24, 1891, at which time defendant in error paid to plaintiff in error the sum of $599.27, which sum is fifty per cent of the amount of the schedule. To recover the other fifty per cent of the amount of the schedule is the object of the first count in the declaration.

Special counts based upon and setting forth the substance of this contract having been filed, the defendant demurred thereto, which demurrer being sustained by the court, there was judgment thereon; to reverse such judgment this writ of error is prosecuted.

JOSEPH H. DEFREES, attorney for plaintiff in error; ALDRICH, PAYNE & DEFREES, of counsel.

Brief of Defendant in Error, Moran, Kraus & Mayer, Attorneys.

Courts will not permit the parties, by express stipulation, or by any form of language, however clear the intent, to set it aside; on the familiar ground, *conventus privatorum non potest publico juri derogare.* Davis v. Freeman, 10 Mich. 188; Myer v. Hart, 40 Mich. 517.

The rule that parties to a contract can not characterize a transaction by the mere use of terms, is nowhere more fully recognized than by the courts of this State. It has been applied where a penalty has been sought to be disguised under the cloak of liquidated damages. Tiernan v. Hinman, 16 Ill. 400; Scofield v. Tompkins, 95 Ill. 190; Bryton v. Marston, 33 Ill. App. 211.

Mr. Justice Waterman delivered the opinion of the Court.

It is contended by the plaintiff that the contract under consideration is to be construed as a license to use certain machines upon payment by a certain day of the full royalty mentioned in the contract, with a provision that if the sum earned in one month is paid at a fixed period before the same becomes due, then a deduction of fifty per cent shall be made therefrom; that the exaction of twice as much if payment is made on the first day of November as would be required to discharge the debt if paid on the fifteenth day of October, is not the taking or claiming of a penalty, but merely the taking of the exact royalty stipulated for.

The first question to be here considered is, what is the proper construction and meaning of this contract; that is, what did the parties intend and mean thereby.

Contracts are to be considered as an entirety; harmonious significance is, if possible, to be given to each of the parts thereof; they are to be viewed and interpreted from the standpoint occupied by the parties when they were made, and, if enforced by the courts, must not be unconscionable and unreasonable. Bishop on Contracts, Secs. 478 and 737–382, 384; Stacey v. Randall, 17 Ill. 467; James v. Morgan,

1 Lev. 111; The Earl of Chesterfield v. Janssen, 1 Atk. 351, 352; Collins v. Lovelle, 44 Vt. 230; Esham v. Lamar, 10 B. Monroe, 43; Jacquith v. Hudson, 5 Mich. 123; 1 Story's Eq. Juris., Sec. 331, note 5.

It may be fairly inferred that the parties to this contract, in making it, contemplated that at the full schedule prices stated for the use of their machines, the royalty for the month of September, 1891, would amount to over a thousand dollars.

While there is some confusion, if not contradiction, in the contract, as to when the amount earned for that month would be due, we think that the conclusion fairly to be drawn, is, that such amount was payable on the first day of the succeeding November, and that suit therefor might have been properly brought on the second day of that month, and not before.

Did, therefore, these parties intend and mean that for a prepayment on October 15th, of $1,198.63, due November 1st, a discount of $599.27 should be made?

It is manifest that no business man would make such a discount.

If a debtor should account for the disposition of his assets by showing that he had made to a firm in good credit, such an allowance for fifteen days prepayment, the transaction would at once be stamped as fraudulent, and if it were generally known that a mercantile house in Chicago were paying one hundred per cent for fifteen days time on bills of five hundred dollars, its credit would at once be seriously impaired.

To treat therefore, the contract as one by which it was understood and meant by the parties that the real royalty stipulated for, was the full amount named in the schedule, and not fifty per cent thereof, is to so interpret the agreement as to make it a most unreasonable instrument, and one which the natural presumptions are, that the parties did not intend to agree to.

The distinction between a discount of fifty per cent for fifteen days prepayment, and one, two or three per cent allowance for a like time, is so obvious as to need no discussion.

It is true that taking the view we do, that the true meaning of this agreement is that one-half of the amounts specified in the schedule is the real sum stipulated to be paid, and that the royalty earned for September became demandable November first, there is in the instrument no provision for a penalty. Yet, in considering the construction plaintiff urges should be placed upon this instrument, the principles governing stipulated damages, as well as agreements for unreasonable compensation, are applicable. Many years ago, when suit was brought upon a contract to pay for a horse a barley corn a nail, doubling it for each nail, and it was averred that there were thirty-two nails in his shoes, which came to 500 quarters of barley, the court directed judgment only for eight pounds, the value of the horse.    James v. Morgan, *supra*.

It is insisted by the defendant that the true sum agreed to be paid is fifty per cent of the amount of the schedule, and that all in excess of this is a penalty; while the plaintiff contends that the schedule price is the sum intended and agreed, and that there is no penalty, the fifty per cent mentioned being purely a discount for prepayment.

There are few subjects upon which there have been more apparently conflicting decisions than on the subject of whether an agreement to pay or deduct a fixed sum as a compensation for prepayment, or as damages for the doing or not doing of certain things, is to be considered as liquidated damages, an agreed reward, or as a penalty. This arises from the fact that in all this class of cases there has been an attempt by courts of law to shape their rulings so as to, while enforcing a legal right, take into consideration the principles by which a court of equity would be guided in arriving at a conclusion in the same matter.

That parties have a right to make such contracts as they see fit, and that courts will enforce them, is well established; but this, like most general principles, is tempered in its application by other considerations of almost equal importance.

Formerly, he who had incurred the penalty of his bond was compelled to resort to a court of equity for relief and an opportunity to be discharged by paying all the damage

which his obligee had suffered; now courts of law afford this equitable relief. Kemble v. Farren, 6 Bing. 147; Astley v. Welden, 2 B. & P. 346.

So now, in respect to undertakings for the payment of so-called liquidated damages for the doing or not doing of certain things, courts of law will take into consideration the intent of the parties and the reasonableness of the contract, and whenever it appears that the stipulated damages were the subject of calculation and adjustment between the parties, and a certain sum was agreed upon and intended as compensation, and is in fact reasonable in amount, such sum will be allowed by the court as liquidated damages. Union L. & E. Co. v. Erie Ry. Co., 37 N. J. L. 23–27; Wakefield v. Stedman, 12 Pick. 562; Howes v. Axtel, 74 Ia. 400; Westerman v. Means, 12 Pa. 97; Powell v. Burroughs, 54 Pa. 329; Sedgwick on Damages, Sec. 405.

Compensation is the thing which courts have constantly in mind in awarding damages. The question presented to a court when asked to enforce the payment of stipulated damages, is, first, is the amount reasonably compensatory, or is it a mere penalty, having no relation to the injury actually suffered; if the amount so stipulated is such that it violates the fundamental rule of compensation, it will be treated as a penalty, and this, without reference to the name which may be given to what is obviously nothing but a penalty. Sedgwick on Dam., Sec. 407; Scofield v. Tompkins, 95 Ill. 190; Bryton v. Marston, 33 Ill. App. 211; Mueller v. Klein, 27 Ill. App. 473; Tiernan v. Hinman, 16 Ill. 400; Bishop on Contracts, Secs. 737 and 478; Groves v. Groves, 1 Wash. (Va.) App. 1; Longworth et al. v. Asksen, 15 Ohio St. 370.

In Sutherland on Damages, Vol. 1, p. 501, it is said: " Where a large sum is stipulated to be paid on the non-payment of a less sum made payable by the same instrument, the former is *prima facie* a penalty. If the question is to be determined by construction of the instrument alone, it would be deemed a penalty."

In the case of Tiernan v. Hinman, *supra*, the Supreme Court of this State said: " Where by the terms of a contract a greater sum of money is to be paid, upon default in

the payment of a lesser sum at a given time, both courts of law and equity will hold the provisions for the payment of the greater sum to be a penalty. And even where the parties stipulate for the payment of a sum certain on default of the performance of an agreement, such stipulation will be treated as a penalty, if the damages are not difficult of ascertainment."

Whether the damages provided for were difficult of definite ascertainment, or could be readily calculated, is a matter of importance in determining if the stipulated sum is to be deemed a penalty or a reasonable agreed compensation. Sedgwick on Damages, Sec. 413.

In interpreting the contract, the court, when in doubt, will presume the parties not to have meant the stipulated sum to be compensation, or, in other words, will treat the sum fixed by the parties as a penalty. Sed. on Dam. Sec. 408; Smith v. Penton, 6 B. & C. 216.

The damage for a delay in the payment, as well as the reasonable reward for the prepayment of money is easily ascertainable.

Counsel for plaintiff say that for the " assumption " that the real indebtedness is the lesser sum, there is no ground beyond the " seemingly " " large discount;" that this " was a matter for the parties to arrange, and if fairly done, upon sufficient consideration, the court can not change it." We assent to this statement of the power of the court, but we do not think that for what, under counsel's view of the contract is spoken of as the " seemingly large discount," there was sufficient consideration.

As before said, the rule that courts will enforce such contracts as parties see fit to make, at times yields to other considerations; courts do not enforce contracts that are opposed to public policy, nor those clearly unjust and unconscionable. Bishop on Contract, Sec. 216–473; Jacquith v. Hudson, *supra;* 2 Kent's Com., 266; Ray v. Mackin, 100 Ill. 246.

As to such agreements the rule is " *Conventis privatorum non potest publico juri derogare.*"

As before stated, the contract under consideration is somewhat uncertain. Plaintiff contends that the September

royalty was payable November 1st, while the defendant insists that it became, in the language of the agreement, "due and payable on the first day of the calendar month next following," viz., October 1st. While from a consideration of the entire instrument, we are of the opinion that such royalty was not demandable until November 1st, we find that the real payment stipulated to be made was fifty per cent of the sum mentioned in the schedule, and this we think is the conclusion to which any intelligent business man would come from reading the instrument.

It is quite likely that the parties did not understand the contract alike. Plaintiff's managers may have thought that while the real sum to be paid was fifty per cent of that mentioned in the schedule, yet if that earned in one month was not paid by the fifteenth of the succeeding month, the sum earned and to be paid would be doubled.

Plaintiff contends that the true royalty, that agreed to be paid, was the full amount of the schedule. The true royalty was the sum which, under the agreement, was earned, and, consequently, to be paid.

If the entire sums written in the schedule were earned, and consequently the amount of $1,198.63 was due, either October or November 1st, then the agreement to receive, on October 15, $599.27 in full satisfaction thereof, was absurd and unreasonable.

Compensation is not only the thing which, in respect to damages, courts continually bear in mind, but as regards contracts, it is only the compensation earned or the damage suffered which courts will give judgment for. Can it be contended that if $1,198.63 had been earned October 1st, and was payable November 1st, there was any adequate or reasonable consideration for an agreement to receive, on October 15, $599.27 in full payment? Or if for September only, $599.27 was demandable October 15th, that fifteen days thereafter that demand had increased to $1,198.63?

If such be the terms of the agreement, the contract is one that the courts will not enforce.

We think that the Circuit Court arrived at a correct conclusion, and its judgment is affirmed.